

Signed/Docketed
January 28, 2015

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: | ) |
| | ) Case No. 13-15760 MER |
| WESTERN CAPITAL PARTNERS LLC | ) |
| | ) Chapter 11 |
| Debtor. | ) |

## ORDER

This matter comes before the Court on the *Motion for Post-Confirmation Modification to Amended Plan of Reorganization Dated January 6, 2014* ("Motion to Modify") filed by Reorganized Debtor Western Capital Partners LLC ("WCP"), the objection thereto filed by creditor Richard J. Samson ("Samson"), and all related briefs and pleadings filed in connection with the same.[1]  The issue before the Court is whether WCP may modify its confirmed Chapter 11 plan of reorganization under 11 U.S.C. § 1127(b).[2]  The Court, having carefully considered the applicable pleadings, evidence and legal arguments presented by the parties, hereby makes the following findings of fact and conclusions of law.

## BACKGROUND

The litigious history between WCP and Samson is well documented, and the parties agree there are no disputed facts regarding WCP's proposed modification.  However, the Court believes a discussion of the pending litigation between the parties and WCP's bankruptcy case is apropos given the statutory requirements for post-confirmation modification under § 1127(b).

### A.   The Parties

In 2007, WCP loaned over $13 million to entities owned or controlled by Matthew Crocker ("Crocker").  The loan was personally guaranteed by Crocker's

---

[1]  *See* WCP's Motion for Post-Confirmation Modification of Confirmed Plan (Docket No. 256), Samson's Response (Docket No. 265), and the related supplemental briefs and pleadings (Docket Nos. 264, 265, 267, 271, 273, and 274).  In addition, the Court considered the parties' Stipulation Regarding Uncontested Facts (Docket No. 295) and the following admitted stipulated exhibits: Reorganized Debtor's Exhibits 1 through 5; and Samson's Exhibits A through E.

[2]  Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

mother, Edra D. Blixseth ("Blixseth"), who pledged certain personal property as collateral for the loan.  On January 23, 2009, WCP obtained a judgment against Crocker and Blixseth, jointly and severally, in the United States District Court for the District of Colorado.  Less than a month later, Crocker filed a Chapter 7 bankruptcy case in Montana.  Shortly thereafter, on March 26, 2009, Blixseth filed her Chapter 11 case in Montana.

Blixseth's bankruptcy case was converted from Chapter 11 to Chapter 7 on May 29, 2009, and Samson was appointed the Chapter 7 trustee for the Blixseth bankruptcy estate.  WCP filed a proof of claim in the Blixseth bankruptcy case in connection with her personal guaranty, asserting a $13 million claim secured by nearly all of the Blixseth estate's personal property.

During the case, WCP obtained relief from the automatic stay and engaged in various sales of Blixseth's personal property under the Uniform Commercial Code.  Although Samson did not oppose relief from stay, Samson later contested a proposed sale.  Judge Ralph B. Kirscher for the United States Bankruptcy Court for the District of Montana (the "Montana Bankruptcy Court") held § 362(h) had terminated the automatic stay, and "[a]ccordingly, provided [WCP] has a valid security interest in [Blixseth's] various items of personal property that it seeks to sell, the Court concludes that the stay in this case terminated as a matter of law."[3]  In the interim, Samson challenged WCP's claim.

## B.      The Samson/WCP Litigation

On October 21, 2010, Samson commenced an adversary proceeding in Montana against WCP, styled *Samson v. Western Capital Partners LLC (In re Blixseth)*, Adversary No. 10-00094 (the "Samson/WCP Litigation"), seeking *inter alia* to avoid WCP's lien stemming from the Blixseth personal guaranty.  Following trial, Judge Kirscher issued an order on March 18, 2013, providing in relevant part as follows:

> IT IS FURTHER ORDERED that [Samson's] Objection to Western Capital Partners, LLC's [sic] is sustained in part; and Western Capital Partners, LLC's Proof of Claim shall be allowed as a $6,746,105.08 general unsecured claim.

---

[3]  Memorandum of Decision and Order dated August 16, 2010, *In re Blixseth*, Case No. 09-60452, Docket Nos. 785 and 786 (Bankr. D. Mont. 2010).  Samson appealed this ruling, but the decision was affirmed by the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals and the Ninth Circuit Court of Appeals.  *Richard J. Samson, Chapter 7 Trustee v. Western Capital Partners LLC,* 454 B.R. 92 (9th Cir. BAP 2011), *aff'd,* 684 F.3d 865 (9th Cir. 2012).

IT IS FURTHER ORDERED and ADJUDGED that Judgment is entered in favor of the Plaintiff, Richard Samson, and against the Defendant, Western Capital Partners, LLC; and pursuant to 11 U.S.C. § 548, Samson is awarded the sum of $4,013,410.99, and WCP is ordered to return to [Blixseth's] bankruptcy estate all of the "[p]roperty transferred on August 24, 2010, including Edra's interests in BLX Group, Inc. Blixseth Family Investments, LLC, Monarch Designs, LLC, and various contract claims.  The only contract claims WCP need not return to Samson are the CrossHarbor Capital Partner's claims because the Court awarded Samson monetary damages for such claims.

IT IS FURTHER ORDERED and ADJUDGED that Judgment is entered in favor of the Plaintiff, Richard Samson, and against the Defendant, Western Capital Partners, LLC; and pursuant to 11 U.S.C. § 547, the amount of money WCP garnished from [Blixseth's] bank account on February 12, 2009, was an avoidable preference.

IT IS FURTHER ORDERED and ADJUDGED that Judgment is entered in favor of the Plaintiff, Richard Samson, and against the Defendant, Western Capital Partners, LLC; and on his claim for usury, Samson is awarded the sum of $356,609.69.[4]

Consistent with this decision, the Montana Bankruptcy Court entered a judgment in favor of Samson and against WCP (the "Judgment").[5]  WCP appealed the order and Judgment to the United States District Court for the District of Montana.  By Memorandum of Decision and related Order dated April 11, 2014, the Montana Bankruptcy Court denied WCP's motion for the entry of a stay of enforcement of the Judgment pending the appeal.[6]

On August 12, 2014, the United States District Court for the District of Montana entered an Order affirming the Memorandum of Decision and related

---

[4]  *See* Samson's Exhibit D; *In re Blixseth*, 489 B.R. 154, 202-203 (Bankr. D. Mont. 2013).

[5]  A copy of the Judgment was attached as Exhibit 1 to WCP's Brief Regarding Pending Motion to Modify the Plan; *see also* Samson's Exhibit E, at p. 3 (describing the Judgment).

[6]  *See* Samson's Exhibit E.

Judgment of the Montana Bankruptcy Court.[7]  On September 2, 2014, WCP appealed the District Court's Order to the United States Court of Appeals for the Ninth Circuit.  The Samson/WCP Litigation appeal is still pending.

## C.      The Sandoval/Atigeo Litigation

On March 31, 2007, a Letter Agreement and accompanying documents including a promissory note (collectively, the "Letter Agreement") were executed, memorializing an agreement between Michael Sandoval and three companies he controls (the "Atigeo Parties") on one hand, and Blixseth, Crocker, and three other Blixseth family members (the "Blixseth Parties") on the other.[8]  Among other requirements, the Letter Agreement required the Ategio Parties to pay the Blixseth Parties over $11 million in exchange for certain limited liability ownership interests.  Pursuant to Blixseth's personal guaranty, WCP asserted a lien against the Blixseth estate's contract claims for enforcement of the Letter Agreement.

After Blixseth filed for bankruptcy, Mr. Sandoval commenced an adversary proceeding in Montana against Samson, Blixseth, Crocker and others, styled *Atigeo, LLC, et al. v. Samson, et al.*, Case No. 09-00105 (the "Sandoval/Atigeo Litigation").  WCP filed a third-party complaint in this action, where the disputes between WCP and Samson continued.  WCP maintains it succeeded to the interests of the Blixseth Parties under the Letter Agreement pursuant to a foreclosure and sale conducted under Article 9 of the Uniform Commercial Code.  It is undisputed the Article 9 sale is valid.  As it relates to the instant matter, WCP opposed the repudiation remedy sought by the Atigeo Parties because WCP believes it held an interest only in the Blixseth estate's contract claims and not its tort claims.  The effect of the repudiation remedy is both the elimination of any claim on the Letter Agreement - the basis for WCP's First Amended Third Party Complaint- and the resurrection of the Blixseth estate's tort claims.  WCP contends the Letter Agreement circumvents settlement of those tort claims held by the Blixseth Parties against the Ategio Parties.

Samson asserts the underlying security interest is a fraudulent transfer, and contends WCP's interest in the Letter Agreement was avoided *vis-a-vis* the Judgment entered in the WCP/Samson Litigation.  If his position is correct, Samson, in his capacity as trustee, would control the Blixseth estate's interests in the Letter Agreement.

---

[7]  Stipulation Regarding Uncontested Facts, at ¶ 7.

[8]  *See* WCP's Exhibit 1.

In June 2011, the Atigeo Parties, Mr. Sandoval and Samson (in his capacity as defendant to the Atigeo Parties' claims) reached a settlement agreement in the Sandoval/Atigeo Litigation, acknowledging a factual basis existed for repudiation of the Letter Agreement.[9]  WCP was not a party to the settlement agreement.  The Atigeo Parties, Mr. Sandoval and Samson also agreed to resolve the tort claims for a payment of $1,250,000 to the Blixseth estate.  The settlement agreement was subject to approval by the Montana Bankruptcy Court.

On September 27, 2011, the Montana Bankruptcy Court approved the settlement agreement over WCP's opposition, and WCP appealed.  On August 9, 2012, the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals reversed the approval of the settlement agreement on procedural grounds (without expressing a view as to the merits of the settlement terms), and remanded the matter to the Montana Bankruptcy Court.[10]  Evidently, the settlement agreement issues remained dormant between the remand and entry of the Judgment in the Samson/WCP Litigation.

## D.    WCP's Bankruptcy Case

On April 10, 2013, about three weeks after entry of the Judgment in the Samson/WCP Litigation, WCP filed a petition for Chapter 11 bankruptcy in the District of Colorado.  WCP admits it cannot pay the Judgment,[11] and consequently, WCP filed for bankruptcy relief to "maintain, operate, and optimize the remaining assets for an orderly liquidation and pursue its appeal of that adverse [J]udgment while it continues to pay its secured creditors."[12]  As noted above, WCP's appeal of the Judgment is still pending.

Post-petition, Samson filed a motion for relief from stay in WCP's bankruptcy case, seeking a determination from this Court as to whether the automatic stay applied to the Sandoval/Atigeo Litigation as a result of the Judgment in the Samson/WCP Litigation, or in the alternative, authority to proceed with the Sandoval/Atigeo Litigation.  WCP opposed relief from stay, arguing WCP would get nothing if the Sandoval/Atigeo Litigation moved forward because Samson would "usurp" WCP's rights and proceed with the settlement of the Letter Agreement.

---

[9]  *See* WCP's Exhibit 1.

[10]  Stipulation Regarding Uncontested Facts, at ¶ 11; *In re Blixseth*, 2012 WL 3234205, BAP Case Nos. MT-11-1574, MT-11-1575 (9th Cir. BAP 2012).

[11]  Disclosure Statement, at p. 6 (Docket No. 194).

[12]  *Id.*

On November 27, 2013, the Court denied Samson's Motion for Relief from Stay, determining "the ongoing [Samson/WCP Litigation] appeal before the U.S. District Court renders the Debtor's claims contingent, and such contingent claims are property of the Debtor's bankruptcy estate subject to the automatic stay."[13]  In addition, the Court *sua sponte* granted relief from stay for the parties to proceed with WCP's pending Motion to Stay Pending Appeal to be adjudicated by the Montana Bankruptcy Court.[14]  WCP's motion for a stay pending appeal of the Samson/WCP Litigation was denied by the Montana Bankruptcy Court, and WCP did not seek a stay pending appeal from the United States District Court for the District of Montana.

  1. *The Confirmed Plan*

On January 6, 2014, WCP filed its Amended Plan of Reorganization ("Confirmed Plan").[15]  The Confirmed Plan includes defined terms for "Litigation" and "Litigation Proceeds," and both definitions encompass the Samson/WCP Litigation, the Sandoval/Atigeo Litigation, and any proceeds obtained from the same.[16]  The Confirmed Plan also defines "Assets" as meaning "all property rights and Interest [sic], real and personal, owned by the Debtor or the Estate as of the Effective Date established herein."[17]  WCP's pre-petition interest and the estate's pre-confirmation interest in the Litigation and Litigation Proceeds fall within the scope of the defined term "Assets."[18]

---

[13] Minutes of Proceeding regarding hearing on Samson's Motion for Relief from Stay (Docket No. 178).

[14] *Id.*

[15] Confirmed Plan (Docket No. 193).

[16] Specifically, the Confirmed Plan defines "Litigation" and "Litigation Proceeds" as follows:

  1.21 <u>Litigation</u> shall mean the various legal proceedings in which the Debtor is involved.

  1.22 <u>Litigation Proceeds</u> shall mean any proceeds recovered by the Debtor from its Litigation and after payment of allowed costs, expenses and attorneys' fees associated with such Litigation. Some Litigation Proceeds may be encumbered by valid and perfected liens.

Confirmed Plan, at p. 4, ¶¶ 1.21 and 1.22.

[17] Confirmed Plan, at p. 2, ¶ 1.3.

[18] Motion for Post-Confirmation Modification of the Confirmed Plan, at ¶ 12.

Following a contested confirmation hearing, the Court overruled Samson's objections and ordered WCP to submit a proposed confirmation order to the Court.[19]  On May 15, 2014, the Court entered WCP's confirmation order as drafted.[20]  Two weeks later, Samson filed a Motion for Clarification of the Confirmation Order, pointing to an inconsistency between the Confirmed Plan and the Confirmation Order.[21]

The Confirmed Plan provides for the transfer of **all** "Assets" to the reorganized debtor on the effective date, including the transfer of all interests in the Litigation and Litigation Proceeds.[22]  The Confirmed Plan does not contain any language providing for the Litigation and Litigation Proceeds to remain in the bankruptcy estate after confirmation.  However, WCP's proposed confirmation order contained an inconsistent sentence, which stated "[p]ursuant to 11 U.S.C. § 1141, all property dealt with by the Plan, except the 'Litigation' and the 'Litigation Proceeds' (as defined in the Plan) shall vest in the Debtor."[23]  The Confirmed Plan and the approved Disclosure Statement did not disclose or provide for any post-confirmation carve-out for any Assets to remain in the bankruptcy estate.  After reviewing the record and all related pleadings, the Court agreed with Samson the express terms of the Confirmed Plan controlled, and the Litigation and Litigation Proceeds vested in the reorganized debtor under the terms of the Confirmed Plan.  Accordingly, the Court removed the inconsistent sentence, and entered an Amended Confirmation Order effective May 15, 2014.[24]  The Amended Confirmation Order is a final order.[25]

2.      *WCP's Motion to Modify the Confirmed Plan*

After the Amended Confirmation Order entered, WCP filed its Motion to Modify the Confirmed Plan on June 6, 2014.  Unsurprisingly, the proposed modification would add language providing for a post-confirmation carve-out for the Litigation and Litigation Proceeds to remain in the bankruptcy estate.

---

[19]   *See* Order (Docket No. 246).

[20]   Confirmation Order (Docket No. 247).

[21]   Samson's Motion for Clarification of the Confirmation Order (Docket No. 253).

[22]   Confirmed Plan, at pp. 10-11, ¶ 6.1.

[23]   Confirmation Order (Docket No. 247).

[24]   Amended Confirmation Order (Docket No. 254).

[25]   At oral arguments, counsel for WCP acknowledged on the record the Amended Confirmation Order is a final non-appealable order.

Specifically, WCP proposes to change two paragraphs of the Confirmed Plan as follows:

> Pursuant to 11 U.S.C. §1127(b), the Debtor requests that the Court enter an Order modifying the Plan to provide that in Article VI, Paragraph 6.1(a), upon entry of the Confirmation Order, title in the Debtor's assets, except for the Litigation and the Litigation Proceeds will be transferred from the bankruptcy estate to the Reorganized Debtor but that Litigation and Litigation Proceeds will remain in the Debtor's bankruptcy estate pending completion of the Litigation and payment of the Litigation Proceeds to creditors as provided for in the Plan.

> Further, pursuant to 11 U.S.C. §1127(b), the Debtor requests that the Court enter an Order modifying Article VI, Paragraph 6.1(b) to state that the Reorganized Debtor, through its members, shall have the authority and standing to pursue its Litigation and, if successful, to pay the Debtor's allowed unsecured creditors and allowed secured creditor claims from the Litigation Proceeds as provided for in the Plan.[26]

WCP also filed a Motion for Order Continuing the Automatic Stay with respect to all "Assets" pending resolution of the Motion for Post-Confirmation Modification.

The Court held an expedited hearing on the Motion for Post-Confirmation Modification and Motion for Order Continuing the Automatic Stay, and extended the stay of the Amended Confirmation Order to preserve the status quo until Samson had an opportunity to respond to the motions.[27] After the parties' submission of briefs, the Court lifted the stay of the Amended Confirmation Order as unnecessary, and set oral arguments on the proposed modification. The Court also noted as follows:

> The Court acknowledges the Reorganized Debtor and Samson are involved in a long and litigious dispute as to the ownership and scope of the Debtor's interest, if any, in the "Litigation" and "Litigation Proceeds" (as those terms are defined in the Confirmed Plan). According to the parties' briefs, this dispute *inter alia* is on appeal before the United States Court of Appeals for the Ninth Circuit. As this Court previously stated on the record to these parties, this Court does

---

[26] Motion for Post-Confirmation Modification of Confirmed Plan, at ¶¶ 14-15 (Docket No. 256) (emphasis added to show proposed modifications).

[27] *See* Minutes of Proceedings dated June 11, 2014 (Docket No. 261).

not intend to interfere with that adjudication, whether before the U.S. Bankruptcy Court for the District of Montana, the U.S. District Court for the District of Montana or the Ninth Circuit. Thus, any stay pending a determination of those interests properly lies with the courts of the Ninth Circuit, not with this Court.[28]

## DISCUSSION

Section 1127(b) provides as follows:

(b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.[29]

The Bankruptcy Code provides a fixed time period for a reorganized debtor to modify a confirmed Chapter 11 plan after confirmation and before substantial consummation of the confirmed plan. "Once a confirmed plan has been substantially consummated, modifications are not permitted."[30] Further, even if the proposed modification is sought within this narrow window, a plan may be modified only if circumstances warrant such modification, and the Court confirms the proposed modified plan after notice and a hearing. The burden of proof for a plan modification under § 1127(b) rests with the party seeking the modification.[31]

It is undisputed WCP is the proponent of the Confirmed Plan and the reorganized debtor, and the modifications were requested after confirmation of

---

[28]  Order and Notice of Evidentiary Hearing (Docket No. 278).

[29]  § 1127(b).

[30]  7 COLLIER ON BANKRUPTCY 1127-10, ¶ 1127.03[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2012) (collecting cases).

[31]  *Matter of Potts*, 188 B.R. 575, 579 (Bankr. N.D. Ind. 1995) (citing *H & L Developers, Inc.*, 178 B.R. 77, 80 (Bankr. E.D. Pa. 1994); *In re Dam Road Mini Storage*, 156 B.R. 270, 271 (Bankr. S.D. Cal. 1993); *In re Modern Steel Treating Co.*, 130 B.R. 60, 64 (Bankr. N.D. Ill. 1991), *aff'd*, 1992 WL 82966 (N.D. Ill. Mar. 31, 1992)); *see also In re 1095 Commonwealth Ave. Corp.*, No. BAP MB 98-051, 1999 WL 35128686, at *3 (BAP 1ˢᵗ Cir. July 14, 1999); *In re Archway Homes, Inc.*, No. 12-02226-8-SWH, 2013 WL 5835714, at *3 (Bankr. E.D.N.C. Oct. 30, 2013).

the Confirmed Plan. Thus, WCP bears the burden of proving all remaining elements of § 1127(b). First, the Court must determine whether the requested modification fits within the established statutory time-frame, or in other words, whether the Confirmed Plan has been substantially consummated. Second, if the requested modification is timely, the Court must also address whether circumstances warrant the requested confirmation and whether the proposed modified plan is confirmable.

## A.    The Confirmed Plan has been Substantially Consummated

The Bankruptcy Code provides the following three-part definition to determine whether a Chapter 11 plan has been substantially consummated:

"substantial consummation" means-

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
(C) commencement of distribution under the plan.[32]

Section 1101(2) is written in the conjunctive. Therefore, all three elements must be satisfied in order for a plan to be deemed substantially consummated.

Congress included the term "substantial consummation" in § 1127(b). Although the Tenth Circuit has not addressed substantial consummation for modification of a confirmed Chapter 11 plan, the Tenth Circuit has applied the § 1101(2) statutory definition in the context of the equitable mootness doctrine.[33] Thus, the Tenth Circuit's plain-meaning approach to the term "substantial consummation" provides guidance to this Court on determining this element in the present instance.[34]

---

[32] § 1101(2).

[33] *Search Market Direct, Inc. v. Jubber (In re Paige)*, 584 F.3d 1327, 1341 (10th Cir. 2009) (formally adopting the equitable mootness doctrine in the Tenth Circuit, and setting forth a six-part test for determining whether an appeal is equitably moot); *see also In re Centrix Fin. LLC*, 394 F. App'x 485, 488-89 (10th Cir. 2010). The second prong of the equitable mootness doctrine adopted in the Tenth Circuit asks: "Has the appealed plan been substantially consummated?" *Id.* at 1339.

[34] *See generally Paige*, 584 F.3d 1327, 1341 and *Centrix*, 394 F. App'x 485, 488-89.

1.   *Transfer of Property*

Section 1101(2)(A) requires the transfer of all or substantially all of the property proposed by the plan to be transferred.  In the instant matter, the Confirmed Plan expressly states:

> 6.1  Upon confirmation of the Plan, the Reorganized Debtor will implement its Plan as follows:
>
>> (a) Upon entry of the Confirmation Order, **title in the Debtor's Assets will be transferred from the Bankruptcy Estate to the Reorganized Debtor.**  The Debtor will retain its interest in its subsidiaries which own certain Assets, which Assets are subject to the liens of the Debtor's secured creditors.
>>
>> (b) The **Reorganized Debtor** will pursue its Litigation and, if successful, will pay its unsecured creditors with allowed unsecured claims and certain secured creditors from the Litigation Proceeds.[35]

WCP admits "[t]he Debtor's Assets include, among other things, 'Litigation' and 'Litigation Proceeds', as defined in the [Confirmed] Plan at Article I, Paragraphs 1.21 and 1.22 of the [Confirmed] Plan, respectively."[36]  Further, the Confirmed Plan provides the "Reorganized Debtor" would pursue the Litigation, not the bankruptcy estate.  Thus, all Assets, including the Litigation and Litigation Proceeds, were transferred to the Reorganized Debtor on May 15, 2014, pursuant to the plain language of the Confirmed Plan.

Accordingly, the Court finds the first prong of § 1101(2) has been satisfied.

2.   *Assumption of Management*

Section 1101(2)(B) provides a plan has been substantially consummated if the debtor or the debtor's successor under the confirmed plan assumes "all or substantially all of the property dealt with by the plan."  As discussed above, all Assets were transferred from WCP's bankruptcy estate to the reorganized debtor

---

[35]  Confirmed Plan, at pp. 10-11, ¶ 6.1. (emphasis added).  The Confirmed Plan also states "upon Confirmation of the Plan, the Reorganized Debtor shall be vested with full ownership of and dominion over its Assets free and clear of all claims, liens, charges and other interests of creditors arising prior to the filing of the bankruptcy petition and except as otherwise provided in the Plan."  Confirmed Plan, at p.16-17, ¶ 8.8.

[36]  Motion for Post-Confirmation Modification of the Confirmed Plan, at ¶ 12.

at confirmation.  The Confirmed Plan further provides the reorganized debtor assumed management of all Assets to be distributed under the Confirmed Plan. Specifically, the Confirmed Plan states:

> 3.2 <u>Class 7</u>. The holders of pre-petition equity interests in the Debtor shall retain such interests following confirmation of the Plan.  Such equity interest shall be subject to the provisions of the Plan.  Class 7 is not impaired under the Plan.[37]

In addition, the approved Disclosure Statement elaborates as follows:

### III.   EXPECTED   POST-CONFIRMATION   OPERATION   OF REORGANIZED DEBTOR

> The Debtor will remain in possession of its Assets, pursue its Litigation claims, and will administer its confirmed Chapter 11 Plan to repay creditors pursuant to the terms of the Plan.

> Jeffrey D. Adams will remain as President of the Manager of the Debtor following confirmation of the Plan.  Mr. Adams will receive no salary following confirmation of the Plan.[38]

The pre-petition equity interests in WCP survived confirmation, and the reorganized debtor retained WCP's pre-petition manager post-confirmation. Under the Confirmed Plan, the reorganized debtor assumed management and control over all Assets to be distributed under the Confirmed Plan.  Therefore, the second prong of § 1101(2) has been satisfied.

### 3.   Commencement of Distributions

With respect to § 1101(2)(C), the Tenth Circuit adopted the majority view for "commencement of distributions" in the substantial consummation analysis. The Tenth Circuit stated as follows:

> As the district court noted, however, Appellants' construction of § 1101(2)(A) as requiring completion of substantially all payments to creditors would render meaningless § 1101(2)(C), **which requires only that distributions under the plan be commenced.** Appellants' construction has been rejected by a majority of courts to consider the issue, beginning with *In re Hayball Trucking, Inc.*, 67 B.R.

---

[37] Confirmed Plan, at p. 7, ¶ 3.2.

[38] Disclosure Statement, at Art. III, pp. 6-7.

681 (Bankr. E.D. Mich. 1986). *Hayball Trucking* reasoned that, in order to give effect to subsection (C), "distributions to creditors over a period of time are not the types of transfers of property . . . contemplated in subsection (A)." *Id.* at 684. Instead, the court concluded:

> [S]ubsections (A) and (C) appear to distinguish between transfers of property to or from the debtor at or near the time the plan is confirmed [,] undertaken to shape the new financial structure of the debtor[,] and distributions of dividends to creditors made over a period of time from operating revenues. "Substantial consummation" requires completion or near completion of the former, but only commencement of the latter.

*Id.*; *see also, e.g.*, *Antiquities of Nev., Inc. v. Bala Cynwyd Corp. (In re Antiquities of Nev., Inc.)*, 173 B.R. 926, 929-930 (9th Cir. B.A.P. 1994) (following *Hayball Trucking*); *In re Potts*, 188 B.R. 575, 580-81 (Bankr. N.D. Ind. 1995) (same); *In re H & L Developers, Inc.*, 178 B.R. 77, 80-81 (Bankr. E.D. Pa. 1994) (same); *In re Burlingame*, 123 B.R. 409, 411-12 (Bankr. N.D. Okla. 1991) (same). We agree with the well-reasoned majority rationale and therefore reject Appellants' contention that the district court erred in concluding the Plan has been substantially consummated, as that standard is defined in § 1101(2)(A)-(C).[39]

Thus, in the Tenth Circuit, "commencement of distribution" for the purposes of § 1101(2)(C) is satisfied when the reorganized debtor begins distributions under the confirmed plan.[40] The Tenth Circuit's position also disposes of WCP's contention this Court should follow the minority position explained in *In re Dean Hardwoods, Inc.*[41] that "commencement should mean not just the beginning of

---

[39] *Centrix*, 394 F. App'x 485, 489 (emphasis added).

[40] The Court acknowledges a minority of courts require most or all distributions be made to all class claimants in order to satisfy § 1101(2)(C). *See, e.g.*, *In re Dean Hardwoods, Inc.*, 431 B.R. 387, 392 (Bankr. E.D.N.C. 2010); *In re Litton*, 222 B.R. 788 (Bankr. W.D. Va. 1998), *aff'd*, 232 B.R. 666 (W.D Va. 1999)(holding plan not substantially consummated because one distribution made to one creditor); *In re Heatron, Inc.*, 34 B.R. 526, 529 (Bankr. W.D. Mo. 1983)(holding plan not substantially consummated twenty-nine months after confirmation when 53% of payments under the confirmed plan had been made). However, this Court will follow the Tenth Circuit's majority position, "which requires only that distributions under the plan be commenced." *Centrix*, 394 F. App'x at 489.

[41] 431 B.R. 387, 392 (Bankr. E.D.N.C. 2010).

payments to a single creditor, but the commencement of distribution to all or substantially all creditors."[42]

As to whether WCP has commenced distributions, the parties stipulated the following distributions have been made by either WCP or by principals of WCP in accordance with the Confirmed Plan:

- On May 21, 2014, WCP made a $50,500 payment to Class 2 under Article II of the Confirmed Plan.

- From May 15, 2014 through October 27, 2014, WCP's principals made the following payments to persons classified as creditors or equity holders under Article II of the Confirmed Plan:

    A. May 29, 2014: $5,958.15 paid to Classes 4 and 5.
    B. May 29, 2014: $5,970.13 paid to Class 1.
    C. June 25, 2014: $5,958.15 paid to Classes 4 and 5.
    D. June 25, 2014: $5,777.55 paid to Class 1.
    E. July 11, 2014: $5,909.45 paid to Class 1.
    F. July 31, 2014: $5,958.15 paid to Classes 4 and 5.
    G. July 31, 2014: $5,970.14 paid to Class 1.
    H. July 31, 2014: $6,016.42 paid to Class 1.
    I. August 29, 2014: $5,958.15 paid to Classes 4 and 5.
    J. August 29, 2014: $12,076.56 paid to Class 1.
    K. October 1, 2014: $5,958.15 paid to Classes 4 and 5.
    L. October 1, 2014: $11,903.67 paid to Class 1.[43]

Under the Confirmed Plan, distributions were made to four different classes before the Motion to Modify was even filed. After the Motion to Modify was filed, from June 6, 2014 through October 27, 2014, at least ten more distributions were made under the Confirmed Plan to Classes 1, 4 and 5. As of December 31, 2014, WCP has made aggregate distributions under the Confirmed Plan in the amounts of $93,354 to secured creditors and $39,875 to unsecured creditors.[44] Accordingly, the Court finds WCP has commenced distributions under the Confirmed Plan, thereby satisfying § 1101(2)(C).

---

[42] *Id.*

[43] Stipulation Regarding Uncontested Facts, at ¶¶ 1-3 (Docket No. 295).

[44] Post-Confirmation Quarterly Report for the fourth quarter of 2014 (Docket No. 302).

At oral argument, WCP raised a peripheral concern that "distribution" is a term of art and to count a distribution towards the substantial consummation analysis, distributions had to be made by the reorganized debtor from the corpus of post-confirmation property, not collateral sources.  WCP offered no supporting authority for this position, and in fact, this argument is without merit for two reasons.

First, there is authority stating directly the opposite of WCP's position:

> The debtor cites to no authority in support of its theory that payments intended to satisfy creditor's claims under the plan do not "count," for distribution purposes, if they are made on the debtor's behalf, rather than directly by the debtor, and the court cannot agree.  The debtor has represented to the court that seven of the nine unsecured claims in Class 9 are fully or partially satisfied, such that the debtor's obligations to those creditors under the confirmed plan are, in full or in part, satisfied.  For the debtor to argue that resolution of these claims is not the product of "distribution under the plan" either by the debtor or, evidently, on the debtor's behalf, is disingenuous at best.  These payments, which were made on behalf of the debtor, constitute distributions under the plan.  *See generally In re WM Six Forks*, 2013 WL 5354748 *2-5 (Bankr. E.D.N.C. 2013) (specifically addressing "disbursements" within the context of quarterly fees under 28 U.S.C. § 1930(a)(6), but also reviewing numerous cases in which payments on behalf of a debtor are considered disbursements and/or distributions by the debtor).[45]

This Court agrees with this reasoning and adopts this position as expressed in *Archway Homes*.  Distributions under a confirmed plan made on behalf of a debtor or reorganized debtor "count" for the purposes of a substantial consummation analysis.

Second, WCP's argument fails under the terms of it own Confirmed Plan, which states:

> 6.1 Upon confirmation of the Plan, the Reorganized Debtor will implement its Plan as follows:
>
> . . .

---

[45]  *In re Archway Homes, Inc.*, No. 12-02226-8-SWH, 2013 WL 5835714, at *3 (Bankr. E.D.N.C. Oct. 30, 2013).

> (c) The Reorganized Debtor will pay creditor classes established under the Plan.
>
> (d) **To the extent necessary, the Debtor's principals** will provide funding to the Debtor to pursue its Litigation, pay allowed administrative expenses, and **pay certain creditors with allowed secured claims** as provided for under the Plan.[46]

This provision reflects the conscious intent of WCP to have its principals make distributions to creditors under the Confirmed Plan to the extent necessary. After the first distribution was made by WCP under the Confirmed Plan, it appears it became necessary for WCP's principals to make the next twelve distributions under the Confirmed Plan. In any event, these distributions made by WCP's principals on behalf of WCP as contemplated and expressly articulated in the Confirmed Plan, constitute distributions under the Confirmed Plan.

In conclusion, the Court finds WCP failed to meet its burden of proving the Confirmed Plan has not been substantially consummated. WCP missed the statutory window to modify the Confirmed Plan because it failed to seek the requested modifications after confirmation and before substantial consummation. Therefore, the Court shall deny the Motion to Modify.

**B.     Circumstances do not Warrant Modification of the Confirmed Plan**

As independent grounds to deny WCP's Motion to Modify, even if the Confirmed Plan was not substantially consummated, the circumstances surrounding the requested modification of the Confirmed Plan do not warrant modification. WCP maintains Samson's opposition to confirmation of the Confirmed Plan and the proposed modification are part of an effort to curtail the resolution of WCP's claims with respect to the Letter Agreement. WCP is concerned if the settlement agreement concerning the Letter Agreement is deemed repudiated, WCP's interest in the Letter Agreement will be void without the necessity of prevailing on the question of fraudulent transfer. The ultimate appeal in the Samson/WCP Litigation is still pending before the Ninth Circuit and, as this Court has stated on the record multiple times, this Court has no intention of deciding the ultimate issue on appeal.

Moreover, at oral arguments, counsel for WCP admitted the Motion to Modify was "a belt-and-suspenders mechanism" to protect the reorganized

---

[46] Confirmed Plan, at pp. 10-11, ¶ 6.1. (emphasis added).

debtor's litigation rights post-confirmation.[47]  WCP believes the Confirmed Plan as drafted protects those litigation rights and the Motion to Modify was "unnecessary," but stated WCP proposed the modification for clarity to avoid the endless litigation between these parties.  The Court agrees a modification of the Confirmed Plan is unnecessary based on the circumstances of this case.

WCP is not without a remedy, and the Ninth Circuit should determine whether the Judgment against WCP in the Samson/WCP Litigation stands.  The decision in that matter will drive the remaining issues between WCP and Samson.  In the interim, this Court previously found WCP's contingent claims in the pending litigation were property of the bankruptcy estate.[48]  This contingent interest transferred to the reorganized debtor upon confirmation of the Confirmed Plan under the terms of the same.  Thus, WCP as a reorganized debtor holds the same contingent claims in the pending Litigation.  This Court is at a loss as to what further clarity it can provide on this issue.

To the extent WCP opposes the settlement agreement in the Sandoval/Atigeo Litigation, it appears the settlement agreement issues are still pending before the Montana Bankruptcy Court.  To the extent the settlement agreement is approved, WCP retains the right of appeal and the right to seek a stay of the approval to preserve the status quo pending a final ruling regarding the Judgment in the Samson/WCP Litigation.  Thus, this Court finds the circumstances of this case do not warrant the requested modification of the Confirmed Plan.

As a final matter, the Court declines to address the remaining requirements under § 1127(b), namely, whether the proposed modified plan meets the requirements of §§ 1122 and 1123, and whether this Court would confirm the plan as modified.  Based on the Court's conclusion, engaging in such an analysis is unnecessary.

## CONCLUSION

For the reasons stated herein, the Court finds modification of the Confirmed Plan is prohibited under 11 U.S.C. § 1127(b).  Accordingly, the Court

---

[47]  Transcript, November 6, 2014, 9:35 a.m. through 9:39 a.m.

[48]  Minutes of Proceeding (Docket No. 178).

ORDERS the *Motion for Post-Confirmation Modification to Amended Plan of Reorganization Dated January 6, 2014* (Docket No. 256) is DENIED.

Dated January 28, 2015.                     BY THE COURT:


_____
Hon. Michael E. Romero, Chief Judge
United States Bankruptcy Court